|||
|---|---|
| Federal Trade Commission,<br><br>        Plaintiff,<br><br>    v.<br><br>Matthew J. Loewen, et al.,<br><br>        Defendants. | CASE NO. C12-1207MJP<br><br>ORDER ON PLAINTIFF'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND EX PARTE MOTION TO SEAL |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

This matter comes before the Court on Plaintiff's ex parte motion for a temporary restraining order and Plaintiff's ex parte motion to seal the entire docket. (Dkt. Nos. 2, 3.) Having reviewed the motions and the remaining record (Dkt. Nos. 1, 4, 5, 6), the Court DENIES Plaintiff's motion for a TRO for failure to adequately explain why an ex parte TRO is justified in this case. However, the Court grants Plaintiff leave to amend its motion to explain why Defendants are likely to dissipate assets or destroy evidence. The Court GRANTS Plaintiff's motion to seal and orders the record sealed until 72 hours after a TRO is issued or until all Defendants have been served, whichever occurs first.

ORDER ON PLAINTIFF'S EX PARTE MOTION
FOR A TEMPORARY RESTRAINING ORDER
AND EX PARTE MOTION TO SEAL- 1

**Background**

Plaintiff Federal Trade Commission alleges that Defendant Matthew J. Loewen and four companies he controls operate a fraudulent telemarketing scheme targeting consumers who attempt to sell their vehicles on craigslist.org and ebay.com. (Dkt. No. 3 at 2.) The FTC alleges that Defendants contact consumers and tell them they have already found, or surely will find, a buyer for the consumer's vehicle. (Id.) Defendants then allegedly offer to connect the buyer with the seller for a $399 finder's fee. (Id.) Defendants allegedly also promise that, for an additional fee of $99, the consumer can be guaranteed a refund in the unlikely event that the sale falls through. (Id. at 6.) However, Plaintiff alleges that once consumers pay the fee, Defendants do not fulfill any of their promises. (Id. at 2.) Defendants also allegedly refuse to process refunds. (Id.)

Plaintiff alleges that the Defendants' telemarketing scheme violates § 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting commerce, and the FTC's Telemarketing Sales Rule, 16 C.F.R. Part 310, which prohibits material misrepresentations in offering or selling goods or services, including misrepresentations regarding refund or cancellation policies. (Dkt. No. 3 at 2.) Plaintiff seeks this TRO pursuant to § 13(b) of the FTC Act, 15 U.S.C. 53(b).

This case has a cross-border component that underlies Plaintiff's assertion that a TRO is necessary. Defendant Matthew J. Loewen is a resident of British Columbia, Canada, and is the sole owner and operator of the four defendant companies. (Dkt. No. 3 at 3.) The defendant companies include two Canadian LLCs (0803065 B.C. Ltd and 0881046 B.C. Ltd), a Nevada corporation (ReadyPay Services, Inc.), and a Nevada LLC (Xavier Processing Services, LLC). (Dkt. No. 3 at 3-4.) The two American entities share the same registered address in Henderson, Nevada, but they have no known physical presence in the United States. (Id. at 4.)

1  Plaintiff claims that a TRO should be entered without notice to Defendants because "ex
2  parte relief is indispensable to preserving the status quo and securing full and effective relief
3  pending a hearing on the preliminary injunction." (Dkt. No. 3 at 22.) Plaintiff cites to a number
4  of district court cases, including two in the Western District of Washington, FTC v. MCS
5  Programs, LLC, C09-5380-RBL (W.D. Wash. 2009) and v. BC Ltd., 0763496, et al, C07-1755-
6  RSM (W.D. Wash. 2007), where the district court has granted an ex parte TRO request by the
7  FTC in order to freeze a defendant's assets. (Dkt. No. 6 at 4.)

**Discussion**

1. Legal Standard

Plaintiff seeks this TRO under § 13(b) of the FTC Act, which states that a court may issue a temporary restraining order against practices that violate any of the laws enforced by the FTC. 15 U.S.C. § 53(b). In considering whether to grant the FTC's application for a TRO under § 13(b), the Court need only consider two factors: (1) "the likelihood the FTC will ultimately succeed on the merits," and (2) a "balance of the equities." FTC v. Affordable Media, 179 F.3d 1228, 1233 (9th Cir. 1999).  The FTC "need not show irreparable harm." Id.

However, § 13(b) of the FTC Act explicitly requires notice to the defendant before a TRO or preliminary injunction may be issued. The statute states, "Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, *and after notice to the defendant*, a temporary restraining order or a preliminary injunction may be granted without bond[.]" 15 U.S.C. § 53(b) (emphasis added).

Federal Rule 65(b) permits the issuance of an ex parte TRO, but only if (1) specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition, and (2) the

1  movant's attorney certifies in writing any efforts made to give notice and the reasons why it

2  should not be required. Fed. R. Civ. P. 65(b); see also Belgard v. Hawaii, 883 F. Supp. 510, 517

3  (D. Haw. 1995); Inland Empire Enters., Inc. v. Morton, 365 F. Supp. 1014, 1018-19 (C.D. Cal.

4  1973). Because an ex parte order "runs counter to the notion of court action taken before

5  reasonable notice and an opportunity to be heard has been granted both sides of a dispute," the

6  requirements of Rule 65(b)(1) must be scrupulously observed. Granny Goose Foods, Inc. v.

7  Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70, 415 U.S. 423, 438-39 (1974).

8      2. Notice

9      Plaintiff FTC fails here to meet either the notice requirement of § 13(b) of the FTC Act or

10 the heightened standards of Federal Rule 65(b) to allow the entry of a TRO without notice. This

11 is not a trivial concern. "The right to be heard before being condemned to suffer grievous loss of

12 any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a

13 principle basic to our society." Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (citations

14 omitted).

15     Plaintiff does not assert that it has met the notice requirement of § 13(b) of the FTC Act,

16 but it does assert it has met the requirements of Rule 65(b). (Dkt. No. 3 at 22.) Under Federal

17 Rule 65(b), courts have recognized "a very narrow band of cases in which ex parte orders are

18 proper because notice to the defendant would render fruitless the further prosecution of the

19 action." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). However,

20 "the applicant must do more than assert that the adverse party would dispose of evidence if given

21 notice." Id., citing First Tech. Safety Sys., Inc. v. Depinet, 11 F.3d 641, 650 (6th Cir. 1993).

22 "[P]laintiffs must show that defendants would have disregarded a direct court order and disposed

23 of the goods within the time it would take for a hearing . . . [and] must support such assertions by

24 showing that the adverse party has a history of disposing of evidence or violating court orders or

ORDER ON PLAINTIFF'S EX PARTE MOTION
FOR A TEMPORARY RESTRAINING ORDER
AND EX PARTE MOTION TO SEAL- 4

---

that persons similar to the adverse party have such a history." Reno Air, 452 at 1131, citing In the Matter of Vuitton et Fils S.A., 606 F.2d 1, 4-5 (2d Cir. 1979).

While the Ninth Circuit has allowed a plaintiff to justify an ex parte TRO based on its experience with other defendants in similar cases, Plaintiff's proposed category of "defendants who receive notice of an FTC action" is too broad to justify an ex parte TRO. (Dkt. No. 6 at 5.) In Vuitton, the Second Circuit approved an ex parte TRO when Plaintiff pointed to its experience in eighty-four previous actions against counterfeiters where its litigation efforts were foiled because a counterfeiter, after receiving notice of an impending injunction, and before the court could hold a hearing, transferred its inventories to others. 606 F.2d at 2. In Vuitton, the Second Circuit found that Plaintiff's category of "counterfeiters" was narrow enough to satisfy the requirements of due process and Rule 65. Id. However, the general rule is that evidence must relate specifically to the individual defendants to be enjoined. See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills, 321 F.3d 878, 881 (9th Cir. 2003) (ex parte TRO is reasonable given the defendants' "history of fraudulent intra-family transfers, their refusal to disclose asset information in defiance of court order and their convenient divorce settlement"). Plaintiff offers no such evidence here.

The cases cited by Plaintiff also do not support Plaintiff's assertion that an ex parte TRO is appropriate. In Calero v. Pearson Yacht Leasing Co., the Supreme Court held that an ex parte TRO may be appropriate when "preseizure notice and a hearing might frustrate the interests served by the statutes, since the property seized . . . will often be of a sort that could be removed to another jurisdiction, destroyed, or concealed if advance warning of confiscation were given." 416 U.S. 663, 679 (1974). The property at issue in Calero was a yacht, a vehicle which the Court determined was uniquely capable of being removed from the jurisdiction, not a business with an

office and dozens of employees, as is the case here. Id. Plaintiff also cites AT&T Broadband v. Tech Commc'ns, Inc., an Eleventh Circuit case, for the proposition that ex parte relief is proper if providing notice to the defendant would render fruitless the further prosecution of the action. 381 F.3d 1309, 1319 (11th Cir. 2004). However, the Eleventh Circuit in that case relied on evidence specific to the individual defendant that led the court to conclude that he was likely to "secret[e] evidence once notice of a pending search was given." Id. While courts have been slightly more deferential in granting preliminary relief sought by the government than by self-interested private parties, the Supreme Court has consistently held that ex parte relief must be limited to "extraordinary" situations. See, e.g., Calero, 416 U.S. at 679-80.

      Plaintiff does not provide any evidence that this is an "extraordinary" situation. Plaintiff asserts, "In the FTC's experience, in cases such as this, where the Defendants' business operations are rife with fraud, where the Defendants go to great lengths to conceal their identity and location, where they operate from outside the territorial jurisdiction of the United States, and where consumer funds are diverted to foreign bank accounts, there is a strong likelihood that the Defendants will attempt to dissipate assets or destroy evidence during the pendency of this action." (Dkt. No. 3 at 22.) Without more detail, this says little more than that Defendants have been accused fraud and that they are foreign. The Court has found nothing in the record that explains why these particular Defendants, or even people like them, are likely to dissipate assets. Plaintiff also does not reconcile its allegation that Defendants will destroy evidence with contrary evidence in the record. For example, Plaintiff submits evidence that Canadian authorities believe Defendant Loewen has no criminal record and that the corporate Defendants had obtained licenses to operate in British Columbia. (Dkt. No. 5 at 4-9.) While Plaintiff offers

evidence that one or more of the businesses may have been sold in recent months, Plaintiff points to no evidence suggesting that any sale relates to fraudulent activity. (Id. at 9-10.)

Plaintiff's assertions that Defendants "operate outside the territorial jurisdiction of the United States" and that "funds are diverted to foreign bank accounts" also do not withstand scrutiny. Offshore operations often raise suspicions. See, e.g., FTC v. Affordable Media, LLC, 179 F.3d 1228, 1232 (9th Cir. 1999) (existence of defendants' funds in a trust in the Cook Islands supports entry of an ex parte TRO to prevent dissipation). However, Defendants here have an obvious explanation: they run a business based in British Columbia. (Dkt. No. 4 at 199.) It makes sense that Defendants would have Canadian bank accounts because Defendants are Canadian. (Id. (stating that Loewen has a British Columbia driver's license and a Canadian passport).) Also, Canada is not the Cook Islands. The fact that the FTC has already cooperated with Canadian law enforcement—including preparing a declaration filed with motion—weakens Plaintiff's assertion that Defendants would be beyond reach in Canada. (Dkt. No. 4 at 1.)

   3. Scope of Proposed TRO

The scope of the proposed TRO is also overly broad. An ex parte TRO must be "narrow enough . . . to protect the interests of the defendants." AT&T Broadband, 381 F.3d at 1319. Plaintiff seeks a TRO that (1) requires Defendants to immediately cease their deceptive practices; (2) freezes Defendants' assets, wherever located; (3) requires Defendants to provide the FTC with completed financial statements; (4) authorizes expedited discovery; and (5) provides additional ancillary relief. (Dkt. No. 3 at 19.)

Plaintiff's proposed TRO would effectively shut down all aspects of Defendant's business without requiring Plaintiff to meet any standard of proof. It would prohibit Defendants from stating to customers (1) that Defendants have identified a buyer for a consumer's vehicle, (2) that consumers who purchase Defendants' services are likely to be successful in selling their

vehicle within 90 days, and (3) that Defendants will refund the initial fee if the consumer purchases a refund insurance policy. (Dkt. No. 3-1 at 6.) While Plaintiff alleges that these types of statements are the core of the fraud, these statements also appear to be the core of Defendants' business. Enjoining Defendants from making these statements, without notice or the opportunity for any kind of hearing, implicates important due process rights.

The proposed asset freeze is also overly broad. It covers "Defendants, and their officers, agents, servants, employees, and attorneys" and prohibits them from any kind of financial transaction, excepting only the individual Defendant, who may pay his ordinary living expenses "upon prior written agreement with the Commission." (Id. at 10.) Plaintiff makes no showing that its proposed TRO is narrowly tailored to protect the public interest while respecting Defendants' due process rights.

4. Motion to Seal

Plaintiff files a motion to seal the entire docket and record until Defendants have been served. (Dkt. No. 2.) Local Rule CR 5(g) requires that a motion to seal shall provide a specific description of particular documents or categories of documents a party seeks to protect and a clear statement of the facts justifying sealing and overcoming the strong presumption in favor of public access. Plaintiff's assertions that unsealing would render fruitless the prosecution of this action, together with the temporary nature of this request to seal, are sufficient to meet the requirement of Local Rule CR 5(g). Plaintiff's request that the record remain under seal until 72 hours after a TRO is issued or all Defendants have been served, whichever occurs first, is granted. (Dkt. No. 6 at 6.)

**Conclusion**

Because Plaintiff does not meet the notice requirement of 15 U.S.C. § 53(b) and does not meet the requirements of Fed. R. Civ. P. 56(b) allowing a TRO to be issued ex parte, Plaintiff's

motion for entry of a TRO is DENIED. However, Plaintiff is GRANTED leave to amend its motion to provide evidence that Defendants are likely to dissipate assets or dispose of evidence.

Plaintiff has 10 days from the entry of this order to refile its motion for an ex parte TRO. Alternately, if Plaintiff provides notice to Defendants and informs the Court that it wishes to renew its motion, the Court shall set an expedited briefing schedule and determine whether the balance of the equities and Plaintiff's likelihood of success on the merits justify the entry of a TRO.

Plaintiff's motion to seal is GRANTED. The record shall be sealed until 72 hours after a TRO is issued or until all Defendants have been served, whichever occurs first.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 24th day of July, 2012.

Marsha J. Pechman
United States District Judge