UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW J. LOEWEN, et al.,<br><br>Defendants. | CASE NO. C12-1207MJP<br><br>ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER |

This matter comes before the Court on Plaintiff Federal Trade Commission's renewed motion for a temporary restraining order and other equitable relief. (Dkt. No. 8.) Having reviewed Plaintiff's motion, Defendants' opposition (Dkt. No. 27), Plaintiff's reply (Dkt. No. 32), and all related filings (Dkt. Nos. 1, 4, 5, 6, 28, 29, 30, 33, and 37), and having heard the oral argument of the parties on September 10, 2012, the Court DENIES Plaintiff's motion.

**Background**

This matter originally came before the Court on the Federal Trade Commission's ex parte motion for a temporary restraining order and other injunctive relief. (Dkt. No. 3.) In that motion and its supporting declarations (Dkt. Nos. 4, 5, 6), the FTC alleged that Defendant Matthew J.

ORDER DENYING PLAINTIFF'S RENEWED
MOTION FOR A TEMPORARY RESTRAINING
ORDER- 1

1  Loewen and four companies he controls operate a fraudulent telemarketing scheme targeting
2  consumers who attempt to sell their vehicles online. (Dkt. No. 3 at 2.) The gist of the alleged
3  fraud is that the companies contact consumers and offer to connect them with a buyer for a
4  finder's fee, and then the companies keep the money without following through on their promise.
5  (Id. at 6.) The FTC alleged that Defendants' operations violate the FTC Act, 15 U.S.C. §§ 41-58,
6  and the FTC's Telemarketing Sales Rule, 16 C.F.R. Pt. 310. (Dkt. No. 6 at 3.)

7        The FTC first sought the TRO under § 13(b) of the FTC Act, which removes some of the
8  requirements for obtaining injunctive relief when the FTC has reason to believe that an entity is
9  violating or is about to violate the laws enforced by the FTC. 15 U.S.C. § 53(b)(1). The Court
10 denied the FTC's initial motion because § 13(b) of the FTC Act requires notice, which the FTC
11 had not provided, and because the FTC did not meet the irreparable injury requirement of
12 Federal Rule 65(b), which allows an ex parte TRO. Fed. R. Civ. P. 65(b); (Dkt. No. 7 at 3-4.).

13       After the FTC's initial motion was denied, the FTC elected to provide notice to
14 Defendants and seek preliminary relief under § 13(b) of the FTC Act. (Dkt. No. 8 at 2-3.) In the
15 present motion, the FTC asks the Court to enter a TRO prohibiting Defendants from making
16 further misrepresentations to consumers, freezing the assets of Defendants, and requiring
17 Defendants to complete detailed financial statements. (Id. at 11-18.) The FTC also asks the Court
18 order Defendants to show cause why a preliminary injunction should not issue and to authorize
19 expedited discovery procedures. (Id. at 22.) Defendants were served on Aug. 2, 2012, and the
20 Court set a hearing and requested briefing from Defendants. (Dkt. Nos. 10, 11.)

21       In their response the Plaintiff's renewed motion, Defendants assert that the telemarketing
22 businesses at issue have been sold, and that they have been out of the field of advertising used
23 automobile sales since November 2011. (Dkt. No. 27 at 1.) They offer sworn affidavits from
24

ORDER DENYING PLAINTIFF'S RENEWED
MOTION FOR A TEMPORARY RESTRAINING
ORDER- 2

1 Defendant Loewen saying that he sold the companies and from third party Brandyn Smilovici,

2 who avers that his company, Marbls Marketing, purchased the operational assets of the

3 telemarketing companies in November 2011. (Dkt. Nos. 28, 29.)  They also offer a declaration

4 from Warren Kean, another person involved with the telemarketing companies, who avers that

5 the companies were sold in 2011 and that they ceased operations then, save issuing some

6 refunds. (Dkt. No. 30 at 2.)  Defendants assert that the injunctive relief the FTC seeks is

7 unwarranted because the FTC has no evidence that Defendants are likely to dissipate assets and

8 that the TRO is overbroad. (Dkt. No. 27 at 12.)

9       The FTC counters by pointing to the lack of documentation supporting Defendants'

10 claims surrounding the sale of the business. (Dkt. No. 32 at 6.) The FTC also points to new

11 evidence of a company called "Car Aquire" [sic], created in November 2011, which "has all the

12 hallmarks of Loewen's previous operation, and appears to be nothing more than Defendants'

13 latest attempt to churn old wine into new bottles." (Id. at 4.) The FTC provides one interesting

14 piece of evidence linking Defendant Loewen to this new entity: Car Aquire's credit and debit

15 card transactions are processed by an entity located at the same address in Costa Mesa, Calif.,

16 that Loewen previously listed on business registration forms. (Id.) The FTC asserts that, even if

17 Defendants have ceased operations, injunctive relief is warranted because there is a possibility of

18 recurrence. (Id. at 10-11.) The FTC argues this is because "the essence of this scheme has

19 Defendants forming and dissolving entities as consumer complaints mount." (Id. at 11.)

20 <center>**Discussion**</center>

21   A.  <u>Legal Standard</u>

22       Section 13(b) of the FTC Act authorizes a court to issue injunctive relief in a case

23 brought by the FTC "[w]henever the Commission has reason to believe . . . that any person,

24

1   partnership, or corporation *is violating, or is about to violate*, any provision of law enforced by
2   the Federal Trade Commission." 15 U.S.C. § 53(b) (emphasis added). This provision gives
3   significant power to the FTC, because when injunctive relief is sought under § 13(b), the Court
4   need only consider two factors: (1) "the likelihood the FTC will ultimately succeed on the
5   merits," and (2) a "balance of the equities." FTC v. Affordable Media, 179 F.3d 1228, 1233 (9th
6   Cir. 1999). The FTC "need not show irreparable harm." Id.

7    In contrast, where the FTC cannot show that it has reason to believe that harms are
8   located in the present or future, the requirements for injunctive relief are more stringent. A
9   plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits,
10  that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of
11  equities tips in his favor, and that an injunction is in the public interest. Winter v. NRDC, Inc.,
12  557 U.S. 7, 20 (2008). Although the FTC seeks a TRO, when notice is given, the procedure that
13  is followed does not differ functionally from that on an application for a preliminary injunction.
14  See Dilworth v. Riner, 343 F.2d 226 (5th Cir. 1965); 11A Charles Alan Wright & Arthur R.
15  Miller, Fed. Prac. & Proc. Civ. § 2951 (2d ed.).

16    The FTC must meet the Winter requirements here, because it does not adequately show
17  that it has reason to believe that any Defendant "is violating, or is about to violate" any law
18  enforced by the FTC. 15 U.S.C. § 53(b). Confronted with the sworn affidavits of Defendant
19  Loewen and third party Brandyn Smilovici stating, under penalty of perjury, that the
20  telemarketing operations were sold in 2011 and that Defendants are no longer involved in this
21  type of operation, the FTC fails to offer sufficient evidence to demonstrate that Defendants'
22  allegedly illegal operations are ongoing. (Dkt. Nos. 28, 29.) The FTC's only evidence that
23  Defendants' operations are continuing comes from the operations of another company, Car
24

ORDER DENYING PLAINTIFF'S RENEWED
MOTION FOR A TEMPORARY RESTRAINING
ORDER- 4

Aquire [sic], that uses the same address for credit card processing that Defendant Loewen once listed. (Dkt. No. 32 at 4.) This information raises some question about Loewen's possible involvement. However, absent more information about Car Aquire, Defense counsel's explanation—that when the telemarketing businesses were sold in 2011, not all elements were immediately transferred to the new owners—seems as plausible as the explanation offered by the FTC. When questioned by the Court, the FTC was unable to provide any other basis for its belief that Defendants' telemarketing activities were continuing. Without such a basis to believe Defendants' activities are continuing, § 13(b) of the FTC Act is inapplicable here, and the stricter Winter test applies to this matter. 15 U.S.C. § 53(b); 557 U.S. 7.

In applying the Winter test, the Ninth Circuit uses a sliding scale approach, where the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset the weaker showing of another. Id.; see Alliance for the Wild Rockies v. Cottrell, 632 F. 3d 1127, 1134-35 (9th Cir. 2010). Under the Ninth Circuit's sliding-scale approach, sometimes called a "serious questions" test, a preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits are raised and that the balance of hardships tips sharply in the plaintiff's favor. Id. The plaintiff must also satisfy the other factors of the test, including the likelihood of irreparable harm. Id.

B. Likelihood of Success on the Merits

Based on the voluminous factual record filed by the FTC, including the declarations of a number of consumers from across North America and from consumer protection authorities in Canada and the United States (Dkt. Nos. 4-5), the Court finds that the FTC meets its burden of showing a likelihood of success on the merits. The determination at the preliminary stage of whether a party is likely to succeed on the merits is by its nature an imprecise art. See FTC v

1  Affordable Media, 179 F.3d at 1235 (factual findings at the preliminary injunction stage are
2  "restricted to the limited and often nontestimonial record") (quoting Zepeda v. INS, 753 F.2d
3  719, 723-24 (9th Cir. 1985)). While the movant must set forth evidence to support a likelihood of
4  success, it need not demonstrate an absolute certainty of success. See Abdul Wali v. Coughlin,
5  754 F.2d 1015, 1024-25 (2d Cir. 1985) (movant need only show that probability of success is
6  better than 50 percent).
7        Through the declarations of consumers reporting fraudulent interactions with Defendants,
8  the FTC demonstrates a likelihood it will prevail on its claim for violations of § 5(a) of the FTC
9  Act and the Telemarketing Sales Rule. (Dkt. Nos. 4-5); 15 U.S.C. § 45(a); 16 C.F.R. pt. 310. On
10  the current record, consumer declarations establish that the Defendants, through companies such
11  as "Vehicle Stars" and "Auto Marketing Group," misrepresented, among other facts, that the
12  companies had found buyers for the cars, and that the customers would be able to obtain a refund
13  of the fee if the sale fell through. (Dkt. No. 4 at 33, 64, 72.)  In addition to sworn affidavits from
14  consumers, the declarations also include email chains and letters from Defendants that seem to
15  show a pattern of misrepresentation and failure to disclose material terms. (Id. at 62, 79, 87.) In
16  their declarations, Defendants assert they were not in daily control of the companies, but offer no
17  evidence specifically contradicting the FTC's evidence of deceptive practices. (Dkt. No. 28 at 3.)
18  In the absence of significant evidence from Defendants, the FTC shows a likelihood of success.
19    C.  Irreparable Harm
20        Because the FTC is unable to show that Defendants are currently in the telemarketing
21  business, they do not show that irreparable harm will occur absent injunctive relief. See Rent-A-
22  Center v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991). This is
23  simple enough: if Defendants are inactive, they are no longer harming anyone. The FTC also
24

fails to support a finding of irreparable harm by showing that Defendants are likely to dissipate their assets. See Johnson v. Couturier, 572 F.3d 1067, 1085 (9th Cir. 2009). "A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." Id. The Court addressed this issue in its ruling denying the FTC's motion for an ex parte TRO, where it explained it "found nothing in the record that explains why these particular Defendants, or even people like them, are likely to dissipate assets." (Dkt. No. 7 at 6.) Since then, the FTC has provided no additional information supporting a conclusion that Defendants are likely to dissipate assets. The FTC has not shown irreparable harm will occur absent injunctive relief.

D. Balance of Equities

The FTC's failure to show that Defendants' alleged violations are ongoing weakens its argument that the balance of equities tips in its favor. The FTC argues that its proposed TRO is not overly burdensome because it "only seeks to prevent further violations of the FTC Act and the TSR pending a final resolution on the merits" and "Defendants may continue business operations so long as they do so in compliance with these statutory and regulatory provisions." However, even if true, this only relates to the first portion of the proposed TRO. Later sections impose other hardships on Defendants, including the asset freeze and the disclosure requirements. (Dkt. No. 8 at 13, 22.) While these requirements might be outweighed by the FTC's interest in law enforcement, without evidence of ongoing activity affecting consumers, the balance of equities tips in favor of Defendants.

E. Public Interest

The FTC's failure to show that Defendants' activities are ongoing undermines its argument that the public interest favors an injunction. "[W]hen a district court balances the

hardships of the public interest against a private interest, the public interest should receive greater weight." FTC v. World Wide Factors, Ltd., 882 F.2d 344, 347 (9th Cir. 1989). Here, the FTC argues that "the public interest in preventing misleading and deceptive practices is great and outweighs any private interest." (Dkt. No. 32 at 10.) But the FTC does not explain how enjoining Defendants from activities they have already ceased would further the public interest. The only entity the FTC identifies as still operating, Car Aquire, is not a party to this lawsuit, and it is unclear whether its operations would even be affected by the proposed injunction, because Defendant Loewen denies he has anything to with Car Aquire. (Dkt. No. 32 at 4.) While the FTC asserts that the public is at risk because there is the "possibility of recurrence," the FTC shows no evidence supporting a finding that such a risk exists. (Id. at 11.) Even with a thumb on the scale in its favor, the public interest does not favor injunctive relief here.

## Conclusion

Because Plaintiff fails to show that irreparable injury will occur, that the balance of equities tips in its favor, or that denial of relief would negatively impact public policy, injunctive relief is inappropriate here. Plaintiff's renewed motion for a temporary restraining order and other injunctive relief is therefore DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 12th day of September, 2012.

Marsha J. Pechman
United States District Judge